1840.

Wickes
v.
Clarke.

---

### E. & V. W. WICKES vs. CLARKE and others.

Where both real and personal estate came to a feme covert by descent from her uncle, and her husband who was embarrassed made a settlement of the whole upon her, by a conveyance thereof to a trustee for her separate use : *Held* that the settlement was valid as to the personal property, it being not more than a reasonable provision for the wife and her children; but that the wife's equity did not extend to her husband's legal title for life in her real estate, as tenant by the curtesy initiate, and that the conveyance of his interest in the real estate to the trustee was invalid.

Where the husband voluntarily settles upon his wife personal estate which came to her by descent from her relatives, to no greater extent than the court of chancery would have directed him to do upon a bill filed against him by the wife to protect her equitable claim to a support for herself and her children out of the same, such voluntary settlement will be sustained as against the creditors of the husband; although it is void as to other property contained in the same conveyance to the trustee.

THIS case came before the chancellor upon an appeal by the complainants from a decree of the vice chancellor of the first circuit, dismissing their bill as against the defendants Maria Clarke and Robert Bogardus her trustee. The complainants were judgment creditors of the defendant Peter Clarke, for a debt contracted by him in 1803 ; for which debt James B. Clarke, for whose benefit this suit was prob-

March 3

ably brought, became the surety and joined with his brother Peter Clarke in the bond. The complainants among other things sought to set aside a deed of settlement of the wife's property that came to her by descent from her uncle, and which property was conveyed, in 1829, to the defendant Bogardus, in trust for the use of Mrs. Clarke and her children.

The following opinion was delivered by the vice chancellor on the hearing of the case before him :

McCoun, V. C. The complainants are creditors of Peter Clarke, by judgment recovered on the 21st October, 1831, upon a joint and several bond given by him and James B. Clarke as his surety, on the 1st May, 1803, conditioned for the payment of $4000. Two thousand dollars of the debt remains due, and after fi. fa. issued and returned unsatisfied, the bill in this cause is filed, principally for the purpose of setting aside a post nuptial settlement made upon the wife of Peter Clarke, by deed executed by him and her to the defendant Bogardus as trustee, on the 16th December, 1829. The deed purports to convey a large real and personal property which had descended to the wife as one of the heirs at law and next of kin of her uncle John Fisher, who died in 1827. The husband's estate and interest in the property is now sought to be reached upon the ground that the conveyance is a voluntary one, not founded upon any valuable consideration, and therefore fraudulent and void as against antecedent creditors whose debts remain unsatisfied.

It cannot be denied that a wife, by means of property which she acquires in her own right, may become a purchaser from her husband ; and a post nuptial settlement of a husband's property upon his wife and children, based upon an actual purchase made in good faith and for a valuable consideration, will be good against prior as well as subsequent creditors. (10 *Vesey*, 140. *Atherly*, 155, 161.)

The deed in question is attempted to be supported upon the ground of a purchase by the wife for a valuable consid-

1840.

Wickes
v.
Clarke.

eration ; and for this purpose Mr. Bogardus, the trustee, has been examined as a witness for his co-defendants, subject to all legal exceptions. His competency is objected to, by reason of a supposed interest to support the trust, as it is said he will be entitled to a compensation for executing it. Be this as it may, and supposing the testimony to be admissible, it is still contended that the testimony does not prove a consideration paid or given for the conveyance. The consideration expressed in the deed is one dollar—no other is mentioned or recited in the instrument. It may be inferred, therefore, that nothing more than a mere nominal consideration entered into the minds of the parties at the time, and that the conveyance was intended to be what its silence in that respect would indicate, a mere voluntary act to secure to the wife the use of the whole property real and personal which had then lately descended to her upon the decease of her uncle, discharged of any right or interest her husband by law might have in it. The difficulty with respect to the testimony of Mr. Bogardus is, that although it proves that as far back as the year 1804 the wife applied a considerable part of her then patrimonial estate to the payment of her husband's debts, and again in 1811 appropriated another large landed estate to the purpose of securing and paying other debts of her husband, and among them the bond debt of the complainants, and again in 1829 mortgaged a part of the property which came from her uncle, and which is included in the trust deed in question, to raise the sum of $2000 for the use of her husband, and for which the property is still liable ; yet it does not show that these previous transactions entered into the arrangement and formed the consideration or inducement for the making of the deed. In order to render these advances of the wife's property a consideration for the subsequent settlement of the husband's property upon the wife, it should appear that there was either an agreement between the husband and wife at the time the advances were made to secure her by settlement, and such an agreement as would be obligatory upon him to perform, or that her parting with

her own property or encumbering it for the husband's benefit, was intended to serve as a consideration for a settlement to be afterwards made by him, and that the deed of settlement, when executed, had reference thereto—in short, that there was some connection between these previous advances and the subsequent deed. This appears to be the principle laid down by Chancellor Kent, in *Reade* v. *Livingston*, (3 *John. Ch. Rep.* 481,) when considering the point how far a parol promise, or agreement to make a settlement, will support a subsequent deed as against prior creditors. Nor are the circumstances here of such a nature as necessarily in the absence of proof to raise the presumption that the deed was founded upon the previous devotion and relinquishment of the wife's property to the husband's use. Atherly observes, (p. 164,) that if the settlement on the face of it appears to be purely voluntary, no notice being taken of the wife having released her jointure, &c. yet if the fact of her having done so can be shown to have taken place *about the same time* that the settlement was made, in that case the court will *presume* the relinquishment of the jointure to have been the consideration for the settlement. This observation is founded upon the circumstances of the case of *Scott* v. *Bell*, (2 *Lev.* 70,) where an old settlement by way of jointure upon a wife was relinquished by her and sold, and on the same day a new settlement was made upon her, and Chief Justice Hale and the rest of the court held that they would presume the wife would not have parted with her estate by the old settlement, unless the husband would make the same provision for her by the new, and that the one was intended as a consideration for the other. · (*And see an anonymous case, Prec. in Ch.* 101.) But in *Lavender* v. *Blackstone*, (2 *Lev.* 146,) where the husband upon his marriage, being then under age, promised to make a settlement *when he came of age*, and the settlement not being made till three or four years after that event, and then not directly according to the promise, the same court held it should not be *presumed* to be made in performance of that promise, and required

direct proof to that effect in order to sustain the deed against creditors. Then considering the present as a voluntary deed, not founded on a valuable consideration, (and I am of opinion it must be so regarded,) the next question would be if there were no other circumstances to support it, whether it is void as to prior creditors ?

The doctrine that a voluntary settlement after marriage by a person indebted at the time, is in law presumed to be fraudulent and void against all such antecedent creditors, without regard to the amount of existing debts or the extent of the property settled, or the circumstances of the party, and that no circumstances will permit such debts to be affected by the settlement or repel the legal presumption of fraud, as stated by Chancellor Kent in *Reade* v. *Livingston*, as being the result of the English cases, and reiterated by him in *Bayard* v. *Hoffman*, (4 *John. Ch. Rep.* 450,) has undergone some modification since, by the decision of the court of errors in *Seward* v. *Jackson*, (8 *Cowen*, 406.)

To authorize the court to interfere with and declare a voluntary settlement void, even as to creditors whose debts existed when the deed was made, intentional fraud must appear ; and prior indebtedness is but a badge or argument of fraud which may be explained away or repelled by circumstances. A recent decision of the chancellor in *Van Wyck* v. *Seward*, which went up by appeal from a decision made, (*see* 1 *Edw. Ch. R.* 327,) proceeds upon this principle, and affirms the decree dismissing the bill filed for the purpose of setting aside a voluntary settlement made by a father upon his children, because it was apparent from the circumstances and condition of the father in other respects that he had no intention of defrauding his creditors. But the present case does not call for an inquiry into the motives of Peter Clarke in uniting with his wife in the conveyance of the property in question to a trustee for her benefit. Although it may be deemed voluntary and debts against him remain unpaid, there are other considerations to be attended to in favor of the wife which distinguishes this from the ordinary case of a husband

making a settlement of his own property, or property which he possesses in his own right upon his family under similar circumstances. In such cases there should be the most rigid scrutiny, and the fairness and honesty of the transaction must appear in the clearest light to induce the court to sustain it—but the case is very different where the wife's property acquired during coverture as in this instance is the subject of the settlement—for with respect to both real and personal property which comes to the wife by gift or inheritance, and in which the husband gains an estate or interest in law by virtue of the marriage, the *wife's equity*, as it is called, entitles her to a settlement which this court will invariably enforce in favor of the wife and even the children of the marriage against the husband and all claiming under him, such as assignees or creditors ; especially whenever they are obliged to seek the aid of the court to reach the property. (*Clancy*, 440.) And I think it may be assumed as a rule, that the same circumstances which would induce the court to compel a settlement by the husband or those claiming under him or in his right, will operate to uphold a deed of settlement already made to the same extent that would be required if one should be directed to be made under the view of the court. There are a few cases having a direct bearing upon this point. In *Moor* v. *Rycautt*, (*Prec. in Ch.* 22,) the wife, at the time of the marriage, had a considerable portion in trustee's hands. After the marriage the friends of the wife required it should be settled for her benefit, whereupon it was agreed that the money should be laid out in land to be settled to the use of the husband and wife and the heirs of their bodies. A creditor of the husband exhibited a bill upon the ground that the settlement was after marriage and voluntary, and so ought not to deprive the creditor of his debt. But it was held, that if the husband himself had exhibited a bill against the trustee for the portion, the court would not have decreed it to him without making some such settlement—and so the creditor's bill was dismissed. *Hinton* v. *Scott*, (*Mosely's R.*

336,) is the next case. There the husband who had a considerable portion with his wife on the marriage and had never made any provision for her, afterwards upon her becoming entitled on the death of her father, a freeman of London, to an orphanage part, assigned over such orphanage part to trustees for his wife's sole and separate use during life and then for her children. And upon the husband's creditors filing a bill to have the money paid to them as fraudulently assigned, the M. R., Sir Joseph Jekyll, supposed the plaintiffs to be creditors prior to the assignment, though they had not clearly proved the fact to be so, and held that the husband being in poor circumstances and the wife wholly unprovided for, the creditors should not set aside the assignment or have the interest of the money during his life, for it was a reasonable settlement and such as the court would have obliged the husband to make, if he had sued for the orphanage part in that court; and accordingly dismissed the bill. The same principle is found in *Middlecomb* v. *Marlow*, (2 *Atk.* 519.) And in *Wheeler* v. *Caryl*, (*Amb.* 121;) both of which were decided by Ld. Hardwicke who holds this language; if the husband comes for aid here, this court will decree an adequate settlement to be made on the wife, and will support it as a good settlement for valuable consideration. And if after marriage the husband does agree to do that which the court would have decreed, it shall not be deemed unreasonable, but be held a good settlement against creditors. These cases are cited by Clancy, and they appear to establish the principle which he lays down, that a settlement of the wife's property, or property which the husband acquires in her right during coverture, made on the occasion of his insolvency or other inability to provide for her, and where there has been no previous settlement, and especially if the husband has before received a part of his wife's fortune, is made on so good a consideration, that it will be deemed valid against the husband's creditors, though entered into after marriage, and though the husband was indebted at the time of such

1840.

Wickes
v.
Clarke.

settlement.   Upon this ground and under circumstances so analogous, it is the duty of the court not to interfere with the deed in question.   Here is a case of an insolvent husband; a wife and a large family of children destitute of the means of support, except from property which she has acquired by inheritance or gift during the coverture; the debts of the husband not contracted on the credit of his interest in the property thus acquired ; a settlement of property made for the benefit of the wife and children, and in point of amount and income not shown to be unreasonable. The bill does not undertake to impeach it on that ground, and to claim any excess beyond what may be necessary for their support ; but proceeds to set aside the deed solely on the ground of its being voluntary and fraudulent as to creditors.   This, it appears, is of no avail against the wife's equity, which after all is sufficient to support the deed in the view of this court and to entitle the wife to the full benefit of the property, until it can be shown on the part of creditors, to contain an unreasonably large provision, and more than the wife's necessities require.   If there had been any allegations of this sort, a reference perhaps would be proper to ascertain how far the settlement in question is excessive and unreasonable in amount.   But as the case stands before me, I think I must dismiss the bill as to the wife and her trustee ; but under the circumstances, without costs.

As to the defendant, Peter Clarke, the complainants have a right to retain the bill, for the purposes of a decree as to his individual property, not embraced in the settlement deed, which his answer discloses ; and over which a receiver may be appointed, with authority to sell and to hold the proceeds subject to the further order of the court.

*W. Kent*, for appellant.   The deposition of Robert Bogardus is inadmissible, on the ground of interest.   He is the trustee of Peter and Maria Clarke, and of course his commissions will vary, and, indeed, be lost or gained by the result of this cause.

1840.

Wi·kes
v.
Clarke.

The deed is void as to the real property conveyed by Peter Clarke and wife to Bogardus. The settlement by Peter Clarke of his tenancy by the curtesy on his wife, was voluntary and void by the statute of frauds; especially as to pre-existent creditors. (*Read* v. *Livingston*, 3 *John. Ch. Rep.* 481. *Bayard* v. *Hoffman*, 14 *id.* 450. 5 *Cowen's Rep.* 57. 8 *id.* 406. *Brown* v. *Jones*, 1 *Atkins*, 196. *Slyter* v. *Ashdown*, 2 *Levinz*, 146.) A wife's equity is confined to her choses in action. (1 *Roper on Husband and Wife*, 255 to 272.) There are considerations which will support settlements after marriage. (*Atherly on Marriage Settlement*, 156.) The payment of a marriage portion is a consideration which will support a marriage settlement after marriage. (*Gardner* v. *Painter*, *Cas. Temp. King*, 65.) So will giving up an interest in the settler's estate. (*Atherly on Marriage Settlement*, 159, 162. *Davis* v. *Coltman*, 1 *Vernon*, 294.) But the consideration must be a present contemporaneous one. And it must be reasonably adequate. (*Dewey* v. *Baintim*, 16 *East*, 257. 10 *Vesey*, 140. *Jones* v. *Marsh*, *Cas. Temp. Talbot*, 64. *Roe* v. *Miller*, 2 *Wils.* 358. *Sutt* v. *Bell*, 1 *Atk.* 189. *Atherly on Marriage Settlement*, 173.) Not one of the requisites have been complied with in this case. If the deed is void as to the real estate, it is void as to the personal estate. The rule on this subject is laid down by Atherly, in an anonymous case in *Style's Reports*. Rolle is stated to have said that a deed might be good in part, and fraudulent in part. But he very probably meant that some of the limitations of a deed might be good and others fraudulent; and not that a deed might be good throughout as to part of the estate, and bad throughout as to the remainder.

The only distinction, between the deed as a conveyance of real property, and as a conveyance of personal property, arises from the wife's equity, i. e. her right to claim a settlement out of the personal property. In establishing the extent of the wife's equity, the court will consider whether the wife is provided for or not. (*Parker* v. *Dykes*, 1 *Eq. Cas. Abr.*

54, *pl.* 6, *cited in Kenney* v. *Udell*, 5 *John. Ch. Rep.* 478. *Ex parte Coysegame*, 1 *Atk.* 190.) If the wife is a ward in chancery and has been run away with, she will be entitled to her personal property. Abandonment and adultery on the part of the husband, will induce the court to give the whole interest to the wife. (*Dumond* v. *Magee*, 4 *John. Ch. Rep.* 324. *Newsome* v. *Bager*, *id.* 37, *S. P.* 6 *id.* 178.) The general rule is, the court has never required the husband, or those claiming under him, to settle the whole of the wife's choses in action upon her and her children, but a reasonable proportion only. (1 *Roper on Husband and Wife*, 256. *Per V. Chancellor in Beresford* v. *Hobson*, 1 *Mad.* 363. *See also as to claims of children*, 1 *Roper on Husband and Wife*, 260 ; *Scriver* v. *Tapley*, *Amb.* 509 ; *Murray* v. *Elibank*, 10 *Vesey*, 84 ; 1 *Mad.* 363 ; *Wright* v. *Morley*, 11 *Vesey*, 12.) The wife in this case is well provided for. She is not a ward in chancery. There has been no abandonment, &c. on the part of the husband. All these considerations show that if the wife's equity is to be allowed at all, it will not embrace the whole of the personal property.

*R. Bogardus*, for the respondents. The property assigned was the equitable estate of the wife, and she in conjunction with her husband had in equity a right to put it in trust as a provision for herself and children, not having been previously reduced by him into actual possession. In addition to the wife's right to a provision out of her equitable estate, and to protect it for herself and children, she in this case was a purchaser of her husband's interest at law, by applying her patrimonial estate to the payment of his debts and pledging her real estate for the same purpose. The complainant in equity stands in no better situation than the husband would, if an applicant to this court to possess himself of his wife's equitable estate. The estate in question came to the wife upwards of twenty years after the complainant's debt was contracted. This estate could therefore have been no inducement to the credit. If the

wife's estate was any inducement to it, that had already been conveyed to the obligor, to whom in equity the complainant is bound to look, at all events previously to his claiming the wife's newly acquired equitable estate. The assignment of this newly acquired equitable estate was made in trust as a provision for the wife and her children, after the wife had, out of her own estate, made provision for the payment of the debt in question. The complainant stands in no better situation than that of the husband; and his right being legal and not equitable, and having conveyed his legal estate without restraint, for the benefit of the person equitably entitled to it, this court would not assist him to regain his legal right against equity and good conscience, and of course will not assist another under or through him ; nor will this court, in this case, order a reference to ascertain what would be a proper provision for the wife and children. The assigned estate is not an over provision for the wife and children, nor is it so pretended by the bill. The wife in this case may in equity be considered a purchaser of the husband's legal interest in this newly acquired equitable estate. In equity he was bound to restore to her, her previously appropriated estate to the payment of his debts, as well as the principal sum of $2000 with the interest, to raise which for her husband she had mortgaged part of her real estate. And if the estate assigned had been that of the husband in his own right, and formed a post nuptial settlement, the wife's estate applied by the husband would form a valid consideration therefor. (3 *John. Rep.* 484. 10 *id.* 471. 16 *id.* 47. 9 *Cowen*, 67. 16 *Wend.* 460.) The revised statutes do not reach, nor ever contemplated the wife's equitable interests to be taken under a creditor's bill against the husband for his debt. A voluntary trustee is not entitled to commission ; (settled in the case of *Manning*, 1 *John. Ch. Rep.* 527 ;) and the revised statutes do not alter the law as to voluntary trustees. Most of the cases referred to by the complainants' counsel apply to settlements of the husband's property. There is a just marked distinction in equity between that and the settlement of the wife's estate.

1840.

Wickes
v.
Clarke.

THE CHANCELLOR. I concur in the conclusion at which the vice chancellor has arrived in relation to the personal property which came from her uncle ; which I think, as between her and the creditors of her husband, she had in equity a right to have settled to her separate use for the support of herself and her children. Independent of the fact that she had previously given up a large portion of her patrimony for the payment of her husband's creditors, it is not alleged or proved that the personal estate included in this settlement was any thing more than a reasonrble support for herself and her children. And as this court would have protected it against the husband and his creditors, if the settlement had not been made, there is no reason for setting aside the settlement which has been voluntarily made without a decree of the court.

I am, however, obliged to dissent from the opinion of the vice chancellor so far as relates to the husband's interest as tenant by the courtesy initiate in his wife's real estate. In the case of *Van Duzer* v. *Van Duzer*, (6 *Paige's Rep.* 366,) upon a review of all the cases on the subject, I arrived at the conclusion that the legal estate of the husband in his wife's real property as tenant by the curtesy initiate, could not be protected in equity from the claims of his creditors who had a right to sell the same upon their executions at law. And as the debt in the present case existed at the time of this settlement in 1829, and as there is nothing in the case to show that the husband retained to himself sufficient property of his own to satisfy all existing debts or claims for which he was then liable, the assignment of his life estate in his wife's lands cannot be sustained as against these prior creditors. The decree, so far as relates to that life estate, must therefore be reversed ; and instead of dismissing the bill, the decree must declare the conveyance of the husband's life estate in his wife's real property to the defendant Bogardus, to be inoperative and void as against the complainant's judgment, but that the conveyance of the personal property to the trustee is valid ; and that the conveyance of the real estate in trust is also

valid, except as against the previous creditors of the husband. The decree must also direct that the husband's life estate as tenant by the curtesy initiate in the real property conveyed to the trustee, or so much thereof as may be necessary to satisfy the complainant's debt and costs be sold, upon the usual notice, under the direction of one of the masters of this court, and that the trustee join with the master in a conveyance of such life estate to the purchaser or purchasers upon such sale. The master is also to pay the debt and costs out of the proceeds of such sale, and bring the surplus, if any, into court to abide its further order ; and any of the parties to this suit are authorized to become purchasers at such sale. And all other questions and directions are to be reserved until the coming in of the master's report.