NEUFVILLE, Administratrix, &c. of Thomson, deceased, v.
THOMSON.

---

A gift to a married woman, whether by her husband or other person and with
or without the intervention of a trustee, will, in equity, be protected when
made in good faith and where the rights of creditors are not affected.

To make a gift *inter vivos* valid from husband to wife, there must be a divesting
of the title, and the act of giving must be clearly proved and be irrevocable.

---

*Feb. 7,*
1837.

*Gift.*

BILL, claiming a service of plate as a gift *inter vivos*.

The complainant appeared as the administratrix of the es-
tate of Eliza Thomson, and the said Eliza Thomson having
been the widow of James Thomson deceased. The bill
showed that Skeffington Selby, of New-York, sailed for En-
gland sometime between the years one thousand eight hun-
dred and one thousand eight hundred and six, but at what par-
ticular time the complainant was unable to state; that James
Thomson gave him an order to purchase some articles of sil-
ver plate, to the amount of two thousand dollars, which was
intended as a present for his wife Eliza and that he so express-
ed himself at the time. That the said Selby did, in pursu-
ance of the said order, purchase plate for the said Thomson to
the amount of one thousand nine hundred and ninety dollars,
as per invoice of the same shipped by the vessel *Gold Hun-
ter*. That this plate was received by the said James Thom-
son; and that he, in his lifetime, gave and delivered the same
to his wife, as her own separate property, and always after-
wards spoke of it as her own separate property until his death.
That the said Eliza, upon the death of her said husband, con-
tinued in the possession of the plate so given and delivered to
her, claiming the same as her own property, until her death;
and that she died intestate, in the sole and uninterrupted pos-
session and use thereof, claiming to be the owner. Also, that
after the said Selby purchased the said plate in England, he
forwarded an invoice thereof, with a letter to the said James
Thomson, in answer to his letter of instructions, in which he

informed the said Thomson that no commission would be charged thereon, as it was a present to Mrs. Thomson. That the said husband, after receiving the said plate, made an entry in his memorandum or day book that he had given, as a present to his wife, a sett of plate, invoiced at one thousand nine hundred and ninety dollars, showing how it was intended as an absolute gift to his said wife. That it was a fair and *bona fide* gift from husband to wife and ought to be supported in justice as her special property, if it should not be prejudicial to creditors ; and the complainant charged the truth to be that the said James Thomson died seised and possessed of a large real and personal estate and more than sufficient to pay his debts. That within a few days after the death of the wife, the defendant, son of the deceased James Thomson, took possession of the plate, claimed it as his own and refused to give up any part of it. Prayer, that the defendant might be decreed to deliver up the said plate or account for the same with interest since the death of the said Eliza ; and for other relief.

The cause came before the court on pleadings and proofs. The facts, however, sufficiently appear in the Vice-Chancellor's opinion.

Mr. *Staples*, for the complainant.

Mr. *Roosevelt*, for the defendant.

THE VICE-CHANCELLOR :—At common law, there cannot be a gift of chattels *inter vivos*, from the husband to the wife during coverture ; for, being but one person in law, she cannot take independently of him ; and though there might be a declared gift and delivery to the wife, yet the title would remain in the husband, and, at his death, pass to his representatives, except it should be paraphernalia and personal ornaments, suitable to the wife's condition, which the law, as against his representatives, would allow her to retain.

In equity, gifts to the separate use of a married woman, as well those presented by the husband in his life-time as those given by third persons, with or without the intervention of trustees expressly named, will be protected in cases where they have been made in good faith and the rights of creditors

**1837.**

NEUFVILLE
*v.*
THOMSON.

*October 2.*

are not infringed. The case of *Walter* v. *Hodge*, 2 Swanst., 97, S. C., 1 Wils. Ch. R., 445, contains all that it is necessary to refer to on the subject. It admits the proposition that, in equity, a gift by a husband to his wife may, under circumstances, be valid; that she may, in this way, acquire property to her separate use during coverture; and, if necessary, this court will consider the husband a trustee for her. Still, to constitute such a case, there must be, as was said in *McLean* v. *Longlands*, 5 Ves., 71, nothing less than a clear, irrevocable gift, either to some person as a trustee or by some clear and distinct act of the husband, by which he divested himself of his property and engaged to hold it as a trustee for the separate use of his wife.

*In applying* this doctrine the question is, whether the widow or her representatives, claiming the gift, has satisfactorily established a clear and distinct act of the husband's, by which he divested himself of the property and agreed to hold it as a trustee for his wife. Acts to have this effect may be such, for instance, as the transfer of stock by the husband, in his lifetime, into the wife's name; or the purchase of stock by a man in the name of himself and wife or of any other personal property; or the putting out money and taking securities in her name or in both their names, and the husband dies, leaving the wife survivor. In all such cases it will be presumed, there being no fraud and where the money or property may not be required for the payment of the debts of the husband and he has not aliened or made any contrary disposition of it, that it was intended as a provision for the wife; and she will be entitled to hold it: Williams on Executors, 489.

Is this a case of such a clear and unequivocal act of the husband, in consummating a gift to the wife, as authorized her to say, in his life time, that the plate in question was her separate property and of which he intended to divest himself of all ownership? The bill claims the property upon the ground of such a gift *inter vivos*. The answer denies it to have been a gift, and puts the complainant to her proof. In my judgment the evidence fails to support the bill.

There is nothing in the invoice and bill of lading which are given in evidence, nor in or about the letters on the subject of the original purchase and shipment of the plate in England,

or the manner of the husband's paying for it, that indicates any
design or intention on his part to make it the separate and exclu-
sive property of his wife.   On the contrary, it seems to have
been intended as a sett of family plate, over which he meant
to keep the control.   It was paid for by the husband out of
his own money.   His own crest was engraved upon it ; but
neither the wife's initials, name nor arms appear to have been
used at all.   During his lifetime, it was kept by himself or
under his own control, like any other article of valuable proper-
ty ; and was deposited by him in the vaults of a bank for safety
whenever he was about to leave town for the summer.   The
entry in his " Family Expense Book" is relied upon as denot-
ing a gift to his wife : " *gave Mrs. T. invoice of plate*," put-
ting down the cost; and so he entered other articles, as, " gave
Mrs. T. a piece of flannel."   And it appears that he was in the
habit of entering in the same book, consecutively, sums of
money given to his wife or paid by himself for family ex-
penses.   All this shows the object to have been to keep an
account of his expenditures, so as to know how much he ex-
pended in his family and for his household ; and the entry in
relation to the plate was made more for the purpose of noting
the cost than as evidence of an absolute gift to her.

The procuring of this plate from England may have been
intended as a compliment to his wife and the entry in the book
may be admitted to be evidence of such an understanding.
But this falls short of making it out to be her separate pro-
perty and over which the husband was no longer to exercise
any right of disposition or control.   There is no evidence that,
by any other act or declaration of the husband, he ever admit-
ted it to be his wife's property in that light or that, during his
lifetime, the wife claimed it to be hers.   After his death, there
is evidence from the testimony of her nephews (whose compe-
tency, however, is questioned) that she claimed it as her own
property, which, at her death, would go to her heirs ; but whe-
ther such claim was founded entirely upon an alleged gift from
her husband in his lifetime or under his will does not very
distinctly appear.   She submitted the will to counsel for an
opinion and did so, as may be fairly inferred, for the purpose
of knowing whether, by the will, she did not take the entire
ownership.

1837.

NEUFVILLE
v
THOMSON.

The circumstance that the husband, by the will, gave to his wife for life the use of " all his silver plate, whatsoever the same might be," goes far to show that, according to his own understanding, at least he had not, beforehand, given her the entire ownership of the same property ; and if he had not intended to include the property in question in the testamentary bequest, it appears to me a natural presumption that he would have discriminated and said, " all, besides what I have heretofore given to her," or, at any rate, something to show that, in the gift of plate for her use during life, he did not mean to include the large and valuable sett of plate in question, provided he had really, before, deprived himself of all power of disposition over it as now contended for.

I have no doubt, from the manner in which the article of silver plate is disposed of in the will—giving the use of it to the wife for life, and from and after her death to his son, who bears his name, that the testator intended the plate in question as the family plate which still belonged to him and which it was competent for him to dispose of as he thought proper.

The claim of this complainant to have the property considered as the estate of the wife during coverture entirely fails ; and the bill must be dismissed ; but as it is filed *in autre droit*, let this be without costs.